**Roland & Lynn GAGLIA, Jr.,
Appellants,**

v.

**FIRST FEDERAL SAVINGS & LOAN
ASSOCIATION; Equibank; James R.
& Norma J. Stampfel d/b/a Stampfel's
Nursery; and The United States of
America, Small Business Administration, Appellees.**

No. 89–3215.

United States Court of Appeals,
Third Circuit.

Argued July 27, 1989.

Decided Nov. 29, 1989.

As Amended Jan. 30, 1990.

Kenneth M. Steinberg (argued), Steidl and Steinberg, Pittsburgh, Pa., for appellants.

Richard S. Ehmann, Hollinshead, Mendelson & Nixon, P.C., Pittsburgh, Pa., for appellee First Federal Sav. & Loan Ass'n of Pittsburgh.

Reed J. Davis (argued), Davis Reilly, P.C., Pittsburgh, Pa., for appellee Equibank.

Charles D. Sheehy, Acting U.S. Atty., Constance M. Bowden, Asst. U.S. Atty. (argued), U.S. Attys. Office, Pittsburgh, Pa., for appellee The U.S. of America, Small Business Admn.

Michal Fox, Community Legal Services, Inc., Philadelphia, Pa., for amicus curiae Consumer Educ. and Protective Ass'n, Inc.

Gary J. Gaertner, Office of Chapter 13 Trustee, Pittsburgh, Pa., for amicus curiae Chapter 13 Standing Trustee.

Before GIBBONS, Chief Judge,
HUTCHINSON, Circuit Judge, and
REED, District Judge.[*]

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Roland and Lynn Gaglia (the Gaglias) filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The United States District Court for the Western District of Pennsylvania, affirming an order of the bankruptcy court, held that the Gaglias could not avoid the portion of secured liens that exceeded the value of the underlying property, since the property was not administered in the bankruptcy proceeding. We will reverse.

---

## I.

The Gaglias purchased a home in 1980. It was financed in large part by a mortgage from Fort Pitt Federal, now First Federal Savings and Loan (First Federal). In 1983, they mortgaged the residence to secure a loan from Equibank. The Equibank loan, guaranteed by the Small Business Administration of the United States (SBA), partially financed a landscaping business, thereby encumbering the property with mortgages exceeding $280,000. When the business failed and sought protection under Chapter 11 of the Bankruptcy Code, Equibank assigned its interest to the SBA.

Later, in 1985, the Gaglias filed their own Chapter 7 petition, listing their residence as their sole asset of any value. After they received their discharge, they started an adversary proceeding in the bankruptcy court to avoid liens. The Gaglias alleged that the property had a value of $34,000 and was subject to a first mortgage, with a balance of $28,873.50, and a second mortgage, with an outstanding balance of more than $200,000, that Equibank had assigned to the SBA. Relying on 11 U.S.C.A. § 506(d) (West Supp.1989), the Gaglias sought an order voiding the SBA's security interest in excess of $5,126.50, the property's claimed value less the balance of the first mortgage.[1]

The bankruptcy court denied relief. Adopting the reasoning of *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986), it concluded that § 506 was intended to apply only to property administered under the Code, not to property abandoned or released from the estate. *In re Gaglia*, 76 B.R. 82, 84 (Bankr.W.D.Pa.1987). The court reasoned that permitting the Gaglias to avoid the liens would be at odds with 11 U.S.C.A. § 722 (West 1979), which provides

for the redemption of certain personal property but does not mention real property. *Id.* Moreover, the court continued, because § 506(d) makes no distinction between real and personal property and offers debtors a better remedy than § 722, allowing debtors to utilize § 506 would render § 722 superfluous. *Id.*

The court also relied on a perceived conflict with 11 U.S.C.A. § 362(d)(2) (West Supp.1989). That section states that a court shall, after notice and hearing, grant a party in interest relief from the automatic stay if the debtor has no equity in the property and the property "is not necessary to an effective reorganization." 11 U.S.C.A. § 362(d)(2). According to the bankruptcy court, this section requires the stay to be lifted at a secured creditor's request so that he "may pursue his remedy against the liened property for whatever benefit he may perceive," a purpose that would be frustrated if a debtor could use § 506 to avoid the undersecured portion of a lien and "redeem" the property at market value. *Gaglia*, 76 B.R. at 84. The court reasoned that the Gaglia's interpretation of § 506(d) was too drastic a change from practice under the Bankruptcy Act to stand in the face of the inclusion of § 362(d)(2), which indicated to the court that Congress wanted to balance debtors' rights in overencumbered assets against the interest of the lenders.[2]

The district court affirmed. It too concluded that § 506(d) applied only to property sold by the estate and that permitting a debtor to utilize it would render § 722's limitation to personal property meaningless. *In re Gaglia*, 97 B.R. 250, 251 (W.D. Pa.1989). Furthermore, the district court stated that allowing Chapter 7 debtors to avoid liens would discourage the use of

---

**1.** The Gaglias also moved to avoid all judgment liens on the property pursuant to 11 U.S.C.A. § 522(f) (West 1979), including a $303,685.73 judgment that Equibank had assigned to the SBA. The bankruptcy court held that *In re Simonson*, 758 F.2d 103 (3d Cir.1985), precluded avoidance of judicial liens. *In re Gaglia*, 76 B.R. 82, 85 (Bankr.W.D.Pa.1987). The district court concluded that the Gaglias had waived this issue by not raising it on appeal from the bankruptcy

court. *In re Gaglia*, 97 B.R. 250, 250 n. 1 (W.D. Pa.1989). Since the Gaglias do not challenge this aspect of the district court's order, we too need not address the issue.

**2.** Since the bankruptcy court held that the Gaglias could not avoid the liens, it did not determine the value of the property.

Chapters 11 and 13, and would be inequitable. *Id.* at 251–52.

The Gaglias appeal. We have jurisdiction pursuant to 28 U.S.C.A. § 158(d) (West Supp.1989). Since the interpretation of § 506(d) presents a question of law, our review is plenary. *See Walters v. United States Nat'l Bank*, 879 F.2d 95, 96 (3d Cir.1989); *In re Roach*, 824 F.2d 1370, 1371–72 (3d Cir.1987).

## II.

Section 506 of the Bankruptcy Code provides, in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 533 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C.A. § 506(a), (d) (West 1979 & Supp.1989).[3]

The Gaglias rely on what they contend is the plain meaning of §§ 506(a) and 506(d). They assert that § 506(a) bifurcates a se-

cured creditor's claim into a secured and an unsecured component, with the claim secured to the extent that the creditor may look to the underlying collateral. *See United States v. Ron Pair Enter.*, — U.S. ——, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989) ("Subsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.") (footnote omitted); *In re Lewis*, 875 F.2d 53, 56 (3d Cir.1989) (similar analysis of § 506). The SBA would therefore have a secured claim for the difference between the market value of the property and the remaining amount of the first mortgage, with the rest of its claim unsecured. The unsecured portion, the Gaglias argue, is then void under § 506(d). The Gaglias contend that the SBA would receive the same amount if the property were liquidated and that lien avoidance simply duplicates the results of a forced sale.

The majority of the bankruptcy and district courts that have considered this issue agree that the language of § 506 allows a Chapter 7 debtor to void liens secured by property that is not administered. *See, e.g., In re Garnett*, 88 B.R. 123, 124 (Bankr.W.D.Ky.1988) (majority view allows Chapter 7 debtor to void unsecured portion of mortgage), *aff'd, United States ex rel. Farmers Home Admin. v. Garnett*, 99 B.R. 757 (W.D.Ky.1989). Although no court of appeals has directly ruled on the question, the two cases that have discussed the application of § 506 in this context indicate that a debtor may use § 506(d) to avoid liens. In *In re Folendore*, 862 F.2d 1537 (11th Cir.1989), the debtors sought to avoid a lien held by the SBA that was junior to two mortgages that secured debts exceeding the property's value. In holding that the SBA's lien could be avoided, the court did not expressly consider whether the property was to be liquidated. It noted, however, that while the debtors had been discharged their case had not been closed, and the senior mortgagees could foreclose on the property at any point. *Id.*

---

**3.** Section 506 applies in Chapter 7 proceedings.    *See* 11 U.S.C.A. § 103(a) (West Supp.1989).

at 1538 n. 2, 1540. This suggested that the property was not subject to liquidation. Recognizing that the SBA's mortgage would be eliminated by such a foreclosure, the court refused to allow the SBA to retain its secured interest in the hope of attaching any equity the debtor could generate. The court reasoned that if the SBA's lien were preserved, the debtor would have no incentive to remain on the property and could abandon it, "leav[ing] a creditor like the SBA with nothing, which is exactly what section 506(d) on its face says it has." *Id.* at 1540.

In *In re Lindsey*, 823 F.2d 189 (7th Cir. 1987), the trustee abandoned the estate, which contained no assets of benefit to the unsecured creditors. The bankruptcy court allowed the debtors to avoid liens under § 506 and gave them thirty days to redeem the property by paying the lenders its current market value. Instead, the debtors appealed to the district court, seeking the right to continue payments on the first mortgage (which had become due and payable on their prior default) and to establish a repayment schedule for the second mortgage. The district court denied this relief and the court of appeals affirmed. While not directly ruling on the use of § 506, the court of appeals commented on its application in cases where the property is not liquidated. The court observed that a creditor need not file a claim to preserve his lien, though he could use § 506 to obtain an unsecured claim against the estate for the difference between the value of his lien and the amount he was owed. The court also stated that although a creditor might be content not to participate in the bankruptcy proceedings, a debtor could use 11 U.S.C.A. § 501(c) (West 1979), to force him into the proceedings, and then invoke the avoidance mechanism of § 506(d).[4]

Equibank and the SBA counter that § 506(a) does not apply where the debtor has no equity in the property. The first sentence of § 506(a) states that

> [a]n allowed claim of a creditor secured by a lien on property *in which the estate has an interest* ... is a secured claim to the extent of the value of such creditor's interest *in the estate's interest in such property* ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C.A. § 506(a) (emphasis supplied). Relying on the highlighted language, they argue that since the Gaglias have no equity in the property and the property will not be administered, the estate has no interest in it. Hence, they assert that the Gaglias

---

4. The Seventh Circuit's cogent explanation of the use of § 506 merits repeating at length:

> The presence of the mortgagees in the bankruptcy proceeding requires comment, in view of the old saw (which, as this case shows, is no better than a half-truth) that liens pass through bankruptcy unaffected. A lienor need not, in order to enforce his lien, file a claim in his debtor's bankruptcy proceeding, though if he does not he loses the chance of enforcing any deficiency judgment against the assets of the bankrupt estate. Since the Lindseys had no assets other than those secured by the mortgages, the mortgagees had no incentive to seek a deficiency judgment, hence no incentive to file a claim in bankruptcy. If, therefore, liens truly passed through bankruptcy unaffected, the mortgagees would not have been dragged into the bankruptcy proceeding at all, since they were content to foreclose on their liens. But then how then are sections 506(a) and (d)—provisions that apply only to liens, and hurt the lienor—ever brought into play? One possibility is that they are brought into play only when the lienor, wanting to have an unsecured claim against the bankrupt estate to the extent of any difference between the value of his lien and the amount of money owed him by the debtor, has voluntarily filed a claim in bankruptcy. This interpretation, which makes section 506 merely an optional creditor's remedy, is consistent with the notion that liens pass through bankruptcy unaffected, but overlooks the significance of section 506(d) when read together with section 501, which governs proof of claims. Section 501(c) authorizes the debtor as well as the creditor to file a proof of claim, including proof of a secured claim under section 506(a). Such a filing not only drags the secured creditor into the bankruptcy proceeding against his will but brings section 506(d) into play, that is, strips down the lien, even if the lienor would have preferred to bypass the bankruptcy proceeding completely.

*Lindsey*, 823 F.2d at 190–91 (citation omitted).

A bankruptcy court in the Seventh Circuit has interpreted *Lindsey* as permitting a Chapter 7 debtor to use § 506 when the property will not be administered. *See In re Zlogar*, 101 B.R. 1, 9–10 (Bankr.N.D.Ill.1989).

should not be able to use § 506 to their advantage here.

If § 506(a) is so interpreted, it would seem to conflict with the plain meaning of § 506(d). Moreover, when a debtor files a Chapter 7 petition, all of his right and title to property, legal as well as equitable, passes to the estate. 11 U.S.C.A. § 541 (West 1979 & Supp.1989). This includes the legal title to property secured by a mortgage. *See id.* § 541(d); *In re Simonson*, 758 F.2d 103, 108 (3d Cir.1985) (Becker, J., dissenting) (unencumbered portion of the value of property passes to estate, as well as legal title; where property overencumbered by mortgages, only legal title passes to estate); 4 *Collier on Bankruptcy* ¶ 541.01, at 541–5 to –6 (L. King 15th ed. 1989) (property of estate is very broad concept that includes title to property and equitable interest without legal title). Thus, even though the Gaglias had no equity in the property, the estate had an interest in it.[5]

Accordingly, we agree with the Gaglias that, on its face, § 506 allows them to avoid the SBA's lien. Moreover, the Gaglias' use of § 506 will place the SBA in the same position as if the property had been liquidated. In liquidation, the SBA would have received the difference between the sale price and the balance remaining on the first mortgage. Under § 506, the SBA has a secured claim to the extent the fair market value of the property, as determined by the bankruptcy court, exceeds the balance on the first mortgage. The SBA may foreclose on the property to realize the value of its secured claim. *See Lindsey*, 823 F.2d at 191. If it does, it should receive the same amount as liquidation would have produced.[6]

While the SBA is no worse off than if the property were sold, the Gaglias may realize significant benefits from lien avoidance. They may be better able to negotiate a repayment schedule with the SBA for the reduced amount of the secured claim. Thus, they have an increased chance to retain their homestead. On the other hand, if § 506 is not applied and the property is not liquidated, the SBA will hold a mortgage exceeding $200,000 on property allegedly worth $34,000. The Gaglias would have little incentive to remain on the property, since they could only get a good title after paying far more than what the property is worth. This is especially true since the SBA could foreclose at any time and realize whatever equity the Gaglias had generated. *See Folendore*, 862 F.2d at 1540.

Finally, the Gaglias may use § 506 because they "fear that a lienor might hang back till [they have] been discharged, and then foreclose and obtain a deficiency judgment. This tactic might impede [their] 'fresh start'; section 506(d), read together with section 501(c), enables [them] to

---

**5.** A contrary conclusion might prevent a use of § 506 that would aid in the overall administration of the estate. If the estate has assets available for unsecured creditors, a secured creditor may wish to use § 506 to bifurcate his claim into its secured and unsecured components. He could then assert an unsecured claim and share in the distribution of the estate. Some bankruptcy courts, however, have reasoned that since the estate has no interest in property that is not administered, this relief is precluded. Instead, they require creditors to foreclose on the property and then assert an unsecured claim for the amount of any deficiency. *See, e.g., Maitland*, 61 B.R. at 134. This denies creditors the more convenient option of asserting an unsecured claim through the lien avoidance mechanism of § 506, a procedure that would aid the overall administration of the estate. This further indicates to us that we should reject the argument that an estate has no interest in property simply because it will not be administered.

**6.** If the bankruptcy court improperly values the property, the creditor may not get what he would in liquidation. This risk, however, occurs in other contexts in which a court is required to make a valuation. Indeed, when § 506 is applied, a secured creditor is disadvantaged if the bankruptcy court undervalues the property. The law generally assumes that these valuations are reasonable approximations of the market and we shall do likewise.

Of course, applying § 506 here denies the creditor any increase in value of the property. However, he would not receive that increase if the property were liquidated. *See In re Tanner*, 14 B.R. 933, 937 (Bankr.W.D.Pa.1981) ("At a forced sale the Debtor does not retain title to the property and the overvalued lien holder would not gain from future appreciation or increases in the equity.").

scotch the tactic." *Lindsey*, 823 F.2d at 192. We therefore believe that applying § 506 here is called for not only by the language of that section, but will further the Code's policy of providing the debtor with a fresh start. *See Folendore*, 862 F.2d at 1540 (whole point of bankruptcy is to give debtor fresh start).

The SBA also argues that the Gaglias cannot use § 506 because they are not "parties in interest." As originally enacted, § 506(d) permitted lien avoidance unless either a "party in interest" had not requested that the claim be allowed or disallowed, or the claim was disallowed under § 502(e). When § 506(d) was amended in 1984, the "party in interest" language was deleted. Section 506(d) now states that the undersecured portion of a lien can be avoided unless it was disallowed under §§ 502(e) or 502(b)(5) or unless the claim is "not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501." 11 U.S.C.A. § 506(d). The SBA asserts that the 1984 changes were intended only to clarify that a separate proceeding to challenge a proof of claim under § 502 was unnecessary, and that nothing in the legislative history indicates a desire to eliminate the requirement that only a party in interest can seek lien avoidance. This would be inconsistent with the language of § 506(d) as modified by Congress. In any event, we believe that the Gaglias have an interest sufficient to invoke § 506.[7]

Next, the creditors argue that the overall statutory scheme indicates Congress did not intend § 506 to apply to property that is not administered by the estate. They contend that § 506 is designed only to facilitate the administration and distribution of the estate. Thus, by defining what part of a claim is an allowed secured one, § 506 determines its place in distribution. This includes the extent to which the holder can be protected under the cram down provisions of Chapters 12 and 13, his right to an election or to realize the "indubitable equivalent" of the secured claim in a Chapter 11 proceeding, and his right to be paid first in a Chapter 7 case. *See, e.g., In re Dewsnup*, 87 B.R. 676, 682 (Bankr.D.Utah 1988).[8]

We do not read this limitation into § 506. On its face, that section contains no such restriction. Congress was surely aware that some estates would contain overencumbered property with nothing available for unsecured creditors. It certainly realized that in many such cases the trustee might decide not to liquidate the property. Yet Congress did not limit § 506 to cases in which it aids the administration of the estate. In addition, the Code expressly allows the debtor to file a proof of claim even if the creditor has chosen not to do so. 11 U.S.C.A. § 501(c). By doing so, the debtor can draw a creditor into the bankruptcy proceedings and invoke § 506(d). *Lindsey*, 823 F.2d at 191. This indicates to us that § 506 was intended not only to protect creditors, but is also available as a debtor's remedy. *See id.* at 190–91.

The SBA also maintains that 11 U.S.C.A. § 362(d)(2) indicates that Congress did not intend to let a Chapter 7 debtor remain in his home as part of his fresh start. Section 362(d)(2) requires the bankruptcy court to grant relief from the automatic stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C.A. § 362(d)(2). The SBA asserts that because secured creditors can have the stay lifted and foreclose against the property, Congress contemplated that all of a debtor's non-exempt property would be liq-

---

**7.** Equibank argues that the claim that a lien secures must be disallowed before it can be avoided. Whatever validity this position may have had under the earlier version of § 506(d), it is untenable after the 1984 amendments. *See Folendore*, 862 F.2d at 1539 (in a pre-amendment case, adopting majority view that § 506(d) may be used even if claim is not disallowed and noting that under 1984 amendments there is no

argument for the position that only disallowed claim may be avoided).

**8.** This argument is strongest where lien avoidance will not aid the administration of the estate. As we have noted, § 506 may facilitate the bankruptcy proceedings even where the underlying property will not be administered. *See supra* n. 5.

uidated in a Chapter 7 proceeding. Congress, the argument goes, therefore did not intend that a Chapter 7 debtor's right to a fresh start would include the right to securely occupy his overencumbered property.

The SBA misses the mark. Section 362(d)(2) allows a secured creditor, in certain situations, to realize the amount of his secured claim before the proceedings end. This does not mean that Congress intended the entire claim to remain secured if the property was not liquidated. It indicates only Congress's desire to allow the secured creditor a means to obtain the value of his secured claim as soon as possible. Moreover, had Congress assumed that all property would be liquidated in a Chapter 7 proceeding, the SBA could hardly take comfort in this fact. Applying § 506 here has the same effect as liquidating the property.[9]

Both the SBA and Equibank also argue that the Gaglias' use of § 506 is inconsistent with 11 U.S.C.A. § 722. That provision states:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C.A. § 722. The creditors note that unlike § 722, § 506 is not limited to personal property. They argue that if § 506 applies here, § 722 would be unnecessary and its restrictions meaningless. *See In re Mahaner*, 34 B.R. 308, 309 (Bankr.W.D.N.Y.

1983) (lien avoidance under § 506 would render § 722 totally surplus).

Section 506, however, is not a redemption provision. *See Folendore*, 862 F.2d at 1540. Even after lien avoidance, the Gaglias will not own the property unencumbered. They will still be subject to First Federal's mortgage and the SBA's claim to the extent it is secured. If the Gaglias are delinquent on the first mortgage First Federal has the right to foreclose, even if they can satisfy the SBA's secured claim against the remaining equity. We do not believe that any arguable redundancy in §§ 506 and 722 precludes the application of § 506 here. *See id.* As one bankruptcy court has explained:

> [I]t is a quantum leap to assume ... that, since § 722 is limited in scope, no other Code section could be utilized to expand those limitations. Neither the Code on its face nor any legislative history known to us expressed an intention to limit the avoiding powers of a Chapter 7 debtor to the scope of § 722, and thus prevent Chapter 7 debtors from taking actions to preserve their realty or nonconsumer personalty in the bankruptcy. The presence of § 522(f)(1), which clearly is not subject to the limitations of § 722, is evidence of at least one tool which Congress gave to Chapter 7 debtors, *inter alia*, to deal with liens on realty. We therefore believe that reasoning based on the assumption that § 722 pre-empts the field of avoidance tools available to a Chapter 7 debtor is not only dangerously presumptive, but plainly wrong.

*In re Mays*, 85 B.R. 955, 959 (Bankr.E.D. Pa.), *aff'd*, 1988 WL 81716, 1988 U.S. Dist. LEXIS 8427 (E.D.Pa. August 1, 1988). *See also In re Gibbs*, 44 B.R. 475, 478 (Bankr. D.Minn.1984) (§§ 506(d) and 722 not inconsistent and any arguable redundancy does

---

**9.** The bankruptcy court interpreted § 362(d)(2) as giving the creditor the right to proceed against the liened property for whatever benefit he might receive. The court reasoned that if the debtor could use § 506 when § 362(d)(2) was also applicable, and thereby "redeem" the property or reduce his payments, § 362(d)(2) would be effectively written out of the Code. *Gaglia*, 76 B.R. at 84.

This reasoning is flawed. Whether § 506 is used in conjunction with § 362(d)(2) or not, the creditor receives exactly the same thing—the fair market value of the property less the value of any more senior obligations. Section 506(d) does not eliminate the utility of § 362(d)(2) in enabling the secured creditor to realize the amount of his secured claim without waiting for the Chapter 7 proceedings to conclude.

not justify limiting § 506(d), which is unambiguous on its face).

The Gaglias' creditors also maintain that allowing lien avoidance here would discourage the use of Chapters 11 and 13 in favor of Chapter 7. First, they argue that under Chapter 13 a debtor may not modify a claim secured only by the debtor's residence. This limitation, however, operates only against secured claims. Thus, 11 U.S.C.A. § 1322(b)(2) (West Supp.1989) permits a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." Whether the plan complies with § 1322(b)(2) depends on the extent to which the claim is secured, an issue that is determined by reference to § 506. *See In re Lewis*, 875 F.2d 53, 56 (3d Cir.1989) (in Chapter 13 proceeding, claim secured only by security interest in residence may be voided to extent it is not an allowed secured claim as defined by § 506); *In re Jablonski*, 88 B.R. 652, 657 (E.D.Pa.1988); 5 *Collier on Bankruptcy* ¶ 1322.06[1][a], at 1322–15 (L. King 15th ed. 1989). The prohibition in § 1322(b)(2) therefore operates against the same portion of the creditor's claim that remains intact even when § 506 is applied in this case. We do not think our interpretation of § 506 will encourage debtors to use Chapter 7 to avoid the effects of § 1322(b)(2).

We likewise reject the contention that allowing debtors to use § 506 will improperly discourage them from using Chapter 11. This effect is said to result because 11 U.S.C.A. § 1111(b)(1) (West 1979) permits certain creditors to elect to have their claims treated as secured to the extent they are allowed, notwithstanding § 506(a). Section 1111(b)(1) is carefully drawn and uses specific, precise language. It demonstrates that Congress knew how to exempt certain creditors from the operation of § 506, and could do so with precision. Considering this careful drafting, we are unwilling to read into § 506 an exemption for an undersecured creditor when the property securing his claim is not liquidated in Chapter 7 proceedings. In addition, the availability of lien avoidance is but one factor that a debtor will consider in choosing between Chapter 7 and Chapter 11. *See, e.g., In re O'Leary*, 75 B.R. 881, 884 (Bankr.D.Or.1987) (lien avoidance cannot be examined in a vacuum; "[e]ach chapter contains its own special inducements and restrictions and must be evaluated as a whole.").

Finally, the creditors argue that it is inequitable to allow Chapter 7 debtors to avoid liens. As we have explained, however, § 506 merely duplicates the result of a forced sale. This is all secured creditors could expect in a Chapter 7 context and is equivalent to what the SBA could realize on its secured claim by foreclosing on the property. We therefore see no reason to read into the statute the limitation that the SBA and Equibank advocate.

### III.

For the reasons set forth above, the order of the district court will be reversed and this matter will be remanded for further proceedings not inconsistent with this opinion.