**In re Paul A. ELAM and Beth A. Elam, Debtors.**

**Paul A. ELAM and Beth A. Elam, Plaintiffs,**

**v.**

**The UNITED STATES of America, Defendant.**

**Bankruptcy No. 590–1174.**
**Adv. No. 590–0099.**

United States Bankruptcy Court, N.D. Ohio.

May 31, 1991.

Maryanne R. Rackoff, Akron, Ohio, for debtor.

Stephen A. Sherman, Washington, D.C., Joyce J. George, U.S. Atty.'s Office, Cleveland, Ohio, for U.S.

Katherine A. Belfance, Trustee, Akron, Ohio.

HAROLD F. WHITE, Bankruptcy Judge.

This matter came before the court on the complaint of plaintiffs Paul A. Elam and Beth A. Elam (hereinafter "debtors") to Determine Dischargeability and Extent and Priority of the lien of the United States of America, Internal Revenue Service ("IRS"), on debtors' real property, and the IRS's memorandum in response. In pre-trial, the parties agreed that this matter would be decided on an agreed stipulation of facts which the parties subsequently submitted to this court on January 16, 1991. Therefore, after an examination of the agreed facts, the record, and the law regarding this matter, the court makes the following Finding of Facts and Conclusions of Law.

## AGREED STATEMENT OF FACTS

1. On June 18, 1990, debtors filed a voluntary petition pursuant to Chapter 7 of Title 11 the United States Code.

2. On July 3, 1990, debtors filed their Schedule B-1 listing their residence at 3886 Fairfield Drive, in the city of Mogadore, County of Summit, and State of Ohio, with a market value of $88,000.00; and on the same date, they filed Schedule B-4, each claiming an exemption pursuant to section 2329.66(A) of the Ohio Revised Code in the sum of $5,000.00.

3. On December 14, 1990, debtors filed their Amended Schedule B-3 listing their interests in an ERISA–type, 401(k) retirement plan through Mr. Elam's employer, Aircraft Braking Systems, for informational purposes only; the total value of the plan was $8,414.90, but the debtors dispute that it is property of the estate.

4. On December 15, 1990, Tom Conway, an appraiser selected by the plaintiffs, and Greg Zivoder, an appraiser selected by the IRS, submitted their joint written appraisal of the debtors' real estate located at 3886 Fairfield Drive, Mogadore, Ohio, stating that the property has a fair market value of $80,000.00, and a liquidation value of $75,000.00.

5. On August 21, 1990, debtors filed an amended Schedule A-2 listing National City Bank ("NCB") with a secured claim and a valid and subsisting first mortgage and first lien on the Fairfield Drive property in the sum of $80,900.00.

6. As of November 28, 1990, the balance of the first mortgage owed to National City Bank is $80,300.00.

7. On their amended Schedule A-2, debtors also list the IRS as a secured creditor with a disputed claim for personal income taxes for 1980 through 1984 inclusive, secured by tax liens against the Fairfield Drive property.

8. On October 1, 1990, the IRS filed its "Proof of Claim for Internal Revenue Taxes" as a secured claim in the total sum of $43,834.02, and as an unsecured general claim in the sum of $10,296.22, a copy of which is appended hereto as "Exhibit B" and incorporated by reference herein.

9. A "Notice of Federal Tax Lien" was filed on October 4, 1988 at the office of the Recorder of Summit County against Paul

A. Elam and Beth Ann Elam for income tax liability for the year ending December 31, 1984 in the sum of $7,069.02.

10. A "Notice of Federal Tax Lien" was filed on October 4, 1988 at the office of the Recorder of Summit County against Paul A. Elam solely for income tax liability for the years ending December 31, 1980; December 31, 1981; and December 31, 1982; in the total sum of $31,503.88.

11. The tax liabilities referenced hereinabove are dischargeable pursuant to section 727(a) and (b) of the Bankruptcy Code.

12. The court finds from the record that the Trustee abandoned the Fairfield Drive property on December 17, 1990, and the debtors were granted a discharge on December 26, 1990.

## ISSUE

May Title 11 U.S.C. § 506(d) be utilized to avoid the IRS's lien on the debtors' Fairfield Drive property even though that property has already been abandoned from debtors' estate?

## CONCLUSIONS OF LAW

This court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

Title 11 U.S.C. § 506(a) provides that a claim is a secured claim to the extent of the value of the creditor's interest in the estate's interest in the property. Title 11 U.S.C. § 506(d) provides that a lien is voidable to the extent that it is unsecured. Since NCB has a first lien on the debtors' Fairfield Drive property, which along with debtors' homestead exemption exceeds both the fair market value and liquidation value of the property, debtors claim that the IRS's lien is voidable pursuant to § 506(a) and (d). Conversely, the IRS asserts that these code sections cannot be utilized to avoid its lien, because the debtors' Fairfield Drive property was abandoned on December 17, 1990.[1] (Docket No. A–2)

Since § 506(a), which determines secured status, refers to property "in which the estate has an interest", the courts are split on the issue of whether or not § 506(d) may be utilized to avoid liens on abandoned property. See § 506(a) which provides, in relevant part, that:

An allowed claim of a creditor secured by a lien on property *in which the estate has an interest,* ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.... (Emphasis added)

Presently, there are only two circuit court decisions wherein the courts have addressed this precise issue: *Gaglia v. First Federal Sav. & Loan Ass'n,* 889 F.2d 1304 (3rd Cir.1989) and *In re Dewsnup,* 908 F.2d 588 (10th Cir.1990), cert. granted, —— U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991). In *Gaglia,* which represents the majority position, the court opined that § 506(a) was not to be interpreted to limit lien avoidance to property which was administered, because to do so would conflict with the plain meaning of § 506(d), which on its face contained no such restriction. *Gaglia,* 889 F.2d at 1307–1308.

We do not read this limitation in § 506. On its face, that section contains no such restriction. Congress was surely aware that some estates would contain overencumbered property with nothing available for unsecured creditors. It certainly realized that in many such cases the trustee might decide not to liquidate the property. Yet Congress did not limit § 506 to cases in which it aids the administration of the estate. *Gaglia,* 889 F.2d at 1309.

However, the *Dewsnup* court, noting that a strong minority of courts have rejected the *Gaglia* approach on the basis

---

1. Debtors have executed a Reaffirmation Agreement with NCB for the Fairfield Drive property. See Docket No. 18, filed September 5, 1990.

that it is unfair to lienholders, held that Chapter 7 debtors could not use § 506 to void the undersecured portion of a lien on real property which had been abandoned by the estate.

> Pursuant to the plain language of section 506(a), an allowed claim of a creditor is one in *which the estate has an interest....* In order to apply section 506(a), the estate must have an interest in the property. The estate has no interest in, and does not administer, abandoned property.... This assessment is consistent with our examination of statutory language generally.... when statutory language is clear, "it is conclusive 'absent a clearly expressed legislative intent to the contrary.' " [citations omitted] *Dewsnup,* 908 F.2d 588 at 590.

The *Dewsnup* court rejected the *Gaglia* court's premise that § 506(d) must be read in isolation:

> It is a fundamental precept of statutory construction that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Dewsnup,* 908 F.2d 588 at 591, quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956).

The *Dewsnup* court opined that "the language used in sections 506(a) and (d) was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code." *Dewsnup,* 908 F.2d 588 at 591.

> It is common in Chapter 12 and 13 cases for debtors to propose plans which deal with and affect abandoned and/or exempted property, such as real property occupied as the homestead.... In such cases, even though the property may no longer be "property of the estate", it nevertheless remains "property in which the estate has an interest." ... Congress has provided numerous incentives to debtors choosing reorganization or rehabilitation under Chapters 11, 12 or 13, rather than liquidation under Chapter 7. It is believed that the availability of § 506 in connection with plans under those chapters which deal with exempt or abandoned property is simply another such incentive. *Dewsnup,* 908 F.2d 588 at 591–591, quoting *In re Shrum,* 98 B.R. 995, 1001 (Bankr.W.D.Okla.1989).

A review of reported Bankruptcy decisions reveals that presently there is only one other Ohio case addressing this issue. In *In re Stephen J. Sills,* 126 B.R. 974 (Bankr.S.D.Ohio 1991), the court thoroughly analyzed both the *Gaglia* and *Dewsnup* decisions and found that the Tenth Circuit's reasoning in *Dewsnup* was the most persuasive: that the plain meaning of the language of § 506 is clear that it cannot be utilized to avoid or "strip down" a lien on property which has been abandoned by the Trustee of the estate.

This court agrees that the reasoning found in *Dewsnup* is the most persuasive. This court notes that the court in *Gaglia* was concerned that a lienor might impede a debtor's "fresh start" by waiting until a debtor had been discharged, then foreclosing and obtaining a deficiency judgment. *Gaglia,* 889 F.2d 1304 at 1308. However, in every bankruptcy where the debtor is granted a discharge and real property is abandoned, a mortgage holder has a right of foreclosure; but discharge orders generally state that "[a]ll creditors whose debts are discharged ... are enjoined from instituting or continuing any action ... to collect such debts as personal liabilities of the ... debtor." (See debtors' Discharge, Docket No. 33) This provision ensures that a debtor's "fresh start" is not impeded. As Judge Clark succinctly stated: "The approach suggested by the Court does not impede the debtors' fresh start. They can give up their interest in the property and obtain their fresh start. Moreover, any deficiency claim is clearly within the scope of the debtors' discharge." *In re Dewsnup,* 87 B.R. 676, 683 (Bankr.D.Utah 1988). Moreover, the language found in § 506 is unequivocal that in order to utilize this code section to avoid liens, the estate must first have an interest in the property. In this case, the estate does not have an interest in the Fairfield Drive property since it was abandoned on December 17,

1990.[2] Finally, this court observes that Congress had ample opportunity when enacting § 722 to include real property as an allowed redemption, but declined to do so. This court surmises that by enacting § 506 as it did, Congress intended to assist homeowners in obtaining additional financing by providing further protection to secondary lienholders.

Therefore, in accordance with the foregoing, this court concludes that debtors shall not be permitted to utilize § 506 to avoid the IRS's lien on the Fairfield Drive property. A separate order in accordance with this Finding shall be entered.

IT IS SO ORDERED.

**2.** This court notes that counsel for debtors approved the Order for Abandonment. (Docket

