**In re Terry Lane WARD and Sue Ward, Debtors.**

**No. BK–91–1868–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

July 12, 1991.

Kenneth C. McCoy, Oklahoma City, Okl., for debtor.

Kirk Cejda, Oklahoma City, Okl., for Nat. Mortg. Co.

Lyle R. Nelson, Oklahoma City, Okl., for Chapter 13 Trustee.

### ORDER ON OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

### THE PLAN AND THE CREDITOR'S OBJECTION

In 1985, debtors executed a note secured by a mortgage on their home. Under the

provisions of the National Housing Act, the mortgagee was issued a Certificate of Insurance by the Secretary of Housing and Urban Development ("HUD"). National Mortgage Company ("National") is the servicer of the note for the mortgagee. On March 15, 1991, debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code,[1] on which date the principal balance of the note was $40,884.09.

Debtors and National have stipulated that the value of the home is $15,050.00.[2] Debtors' plan proposes, under § 506(a), to bifurcate the mortgage into a secured claim of $15,050.00 and an unsecured claim of $25,834.09. Under debtors' plan, monthly payments would be made to the Chapter 13 Trustee ("Trustee") for 58 months, and National's secured claim would be paid in full without regard to National's claim for unpaid pre-petition arrearages. No distribution to unsecured creditors, including the unsecured claim of National, is anticipated under debtors' plan.

National objects to confirmation of debtors' plan, on five grounds, four of which are set out in its original objection and the fifth in a supplemental objection.

First, National appears to contend, albeit without citation of authority or any significant discussion, that the failure of the proposed plan to provide for the curing of claimed pre-petition arrearages in the amount of $1,460.16 somehow renders the plan unconfirmable. Although it is far from clear, it appears that National believes that debtors are required to provide for the curing of pre-petition defaults, as is permitted by § 1322(b)(5).[3]

Second, National contends that debtors' plan does not propose to apply all of their projected disposable income to make payments under the plan, as is required by § 1325(b)(1)(B).[4] National argues that debtor Sue Ward permits a voluntary deduction of $60 from her bimonthly paycheck, which amount is automatically deposited in an account with a credit union. National argues that these funds should be treated as disposable income.

Third, National contends that § 1325(a)(4), sometimes referred to as "the best interest of creditors test," does not allow bifurcation of a home mortgage fully insured by HUD.[5] National argues that it would be paid substantially more if debt-

1. Reference herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

2. Section 506 provides in pertinent part:
    (a) An allowed claim of a creditor secured by a lien on property which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

3. § 1322(b) sets out certain provisions which a Chapter 13 plan *may* contain. Under § 1322(b)(5), the plan *may* "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." If debtors are permitted to bifurcate National's claim, the total amount of the secured claim will be paid within the term of the plan.

4. Section 1325(b)(1) provides in pertinent part:
    (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not

approve the plan unless, as of the effective date of the plan—

   .   .   .   .   .

    (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
    (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
    (A) for the maintenance or support of the debtor or a dependent of the debtor....

5. Section 1325(a) provides in pertinent part:
    (a) Except as provided in subsection (b), the court shall confirm a plan if—

   .   .   .   .   .

    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date....

ors' estate was liquidated under Chapter 7. According to National, in a Chapter 7 case, debtors' home would be foreclosed and sold at sheriff's sale. If the sale brought less than the principal balance of the debt, as is anticipated by the stipulation of the parties as to the value of the property, National could recover from HUD any losses suffered by it. National also argues that the Certificate of Insurance was a condition precedent to the making of the note and mortgage, and that without HUD insuring the mortgagee from loss, debtors would not have obtained the loan.

Fourth, National contends that § 1325(a)(6) precludes confirmation if the plan is not feasible, i.e., if debtors will not be able to make all payments under the plan.[6] It is urged that debtors' schedules list monthly expenses of only $233, and that at the meeting of creditors, debtors testified that they receive financial help from their church and from relatives. National argues that in these circumstances it would be unduly speculative to assume that debtors can make all payments under their proposed plan. National contends, without citation of authority, that the court may not confirm a plan when debtors have admitted that they receive outside help to meet their monthly obligations.

In a supplemental objection, National raises its fifth objection to confirmation of debtors' plan: That since debtors have claimed the property as exempt, and no objection has been raised to the claim of exemption, the property is exempt and bifurcation is prohibited. National's argument in this regard is that the home, as exempt, is no longer property of the estate; that the court no longer has jurisdiction over it; and that § 506 can not be applied to exempt property.

## THE TRUSTEE'S POSITION

The Trustee joins National's objection to confirmation, but only insofar as it challenges the availability of bifurcation in cases involving insured mortgages as a violation of the "best interest of creditors test."[7] Trustee contends that where a mortgage guaranty exists, § 1325(a)(5) prevents confirmation of a Chapter 13 plan.[8] Trustee argues that if a *secured* creditor does not receive as much under a Chapter 13 plan as it would in a Chapter 7 liquidation, the plan can not be confirmed. Trustee states her assumption that, as National contends, reorganization under Chapter 13 is considered insufficient to "trigger" the guaranty provisions of government insured mortgages, and that therefore National would receive less under the proposed Chapter 13 plan than it would receive under a Chapter 7 liquidation. Trustee asserts that a secured creditor is entitled to the full benefit of all documents and contracts applicable to its note and mortgage, including the HUD insurance certificate, and contends that therefore, if the insurance is not "triggered" by Chapter 13, National would receive more under a Chapter 7 liquidation than it would receive under debtors' proposed Chapter 13 plan.

## DEBTORS' RESPONSE

Debtors' response addresses only National's objection to bifurcation of its claim into

---

**6.** Section 1325(a)(6) provides:

    (a) Except as provided in subsection (b), the court shall confirm a plan if—

    .    .    .    .    .

    (6) the debtor will be able to make all payments under the plan and to comply with the plan.

**7.** Trustee cites, and quotes, § 1325(a)(5), which deals with allowed secured claims, as containing the "best interest of creditors test," but it is clear that test is contained in § 1325(a)(4), which deals with allowed *unsecured* claims. See footnote 5, *supra*.

**8.** Section 1325(a)(5) provides:

    (a) Except as provided in subsection (b), the court shall confirm a plan if—

    .    .    .    .    .

    (5) with respect to each allowed secured claim provided for by the plan—

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim' and

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

    (C) the debtor surrenders the property securing such claim to such holder....

secured and unsecured proponents, and makes no reference whatever to National's other objections. Further, it must be noted that the response is, in part, both confused and confusing, and that in certain particulars it reveals an apparent misunderstanding of some of the basic concepts necessary to the resolution of the issues raised by National's objections.

Debtors assert that in *In re Hart*, 923 F.2d 1410 (10th Cir.1991), the court adopted the reasoning of *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir. 1990), holding that § 1322(b)(2) does not preclude the modification of the unsecured portion of *any* undersecured mortgage debt. Debtors argue that § 1325(a)(4) deals only with the amount that the unsecured claim would receive from the liquidated assets of a Chapter 7 estate, and does not include payments from third parties, since they are not assets of a Chapter 7 estate. Debtors further argue that if third party payments were assets of the estate, they would have to be scheduled as such and be made available to the Chapter 7 trustee for proper distribution under the Code. Debtors argue that the amount which unsecured creditors receive in liquidation is determined from the liquidation value of a debtor's non-exempt property available for distribution.

Debtors finally contend that a Chapter 13 plan may deal with property that debtors have claimed as exempt. Debtors argue that this conclusion follows from the fact that § 103(a) provides that Chapter 5 of the Bankruptcy Code applies to both Chapter 7 and Chapter 13 cases.[9] Debtors also argue that § 522(c)(2)(A)(ii) expressly recognizes that § 506(a) and (d) apply to exempt property.[10]

### NATIONAL'S REPLY

National filed a response to debtors' brief in support of bifurcation, contending, *inter alia,* that debtors have misconstrued the purpose of the exemption statute. National argues that § 522(c) does not allow debtors an exemption from liens of creditors, but rather an exemption from the bankruptcy estate. National also argues that the bankruptcy court has no control over exempt property and that § 506(d) does not place exempt property back into the bankruptcy estate.

### DISCUSSION OF NATIONAL'S OBJECTIONS

National's objections will be discussed in the order in which they were asserted, except that the "best interest of creditors" objection under § 1325(a)(4) will be discussed last.

*Failure To "Cure" Arrearages.*

■ As is noted above, it is not altogether clear that National actually objects to confirmation of debtors' plan on the ground that it fails to provide for the curing of prepetition defaults. Since the plan proposes to pay the entire amount of National's allowed secured claim within the term of the plan, the objection, if it is an objection, is not well taken. The arrearages, by definition, are simply unpaid installments which would have been applied, if timely made, to principal and interest. If the entire obligation is retired within the term of the plan, § 1322(b)(5) is not applicable, and it appears clear that the arrearages will perforce be "cured." If the entire obligation was not proposed to be retired within the term of the plan, this court agrees that § 1322(b)(5) would require that the plan provide for curing the arrearages within a

---

**9.** Section 103 provides in pertinent part:

(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title. . . .

**10.** Section 522(c)(2)(A)(ii) provides:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section

502 of this title as if such debt had arisen, before the commencement of the case, except—

     .     .     .     .     .

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not voided under section 506(d) of this title. . . .

reasonable time, while maintaining regular payments. *See In re Hill,* 96 B.R. 809, 814 (Bankr.S.D.Ohio 1989).

If National objects to confirmation because the plan does not provide for "cure" of pre-petition arrearages, the objection will be overruled.

*Failure To Apply All Disposable Income To Plan Payments.*

■ National's second objection relates to the automatic deposit of $60 from each semi-monthly paycheck received by debtor Sue Ward into an account maintained by her in a credit union. National contends that this $120 per month constitutes "disposable income" as defined in § 1325(b)(2), and that under § 1325(b)(1)(B), debtors' plan must provide for all of debtors' projected disposable income to be received during the first three years of the plan to be applied to make payments under the plan.

Debtor Sue Ward conceded at the meeting of creditors that these automatic deductions were voluntary and that the account into which they were deposited was a savings account. Although the very existence of a bankrupt debtor's savings account is indeed a rarity, this court knows of no authority whatever for debtors to continue to accumulate savings while their unsecured creditors are being forced to accept little or nothing on account of their legitimate claims. The $60 deducted from debtor Sue Ward's semi-monthly paycheck is clearly "disposable income" to the extent it is not reasonably necessary to be expended for the maintenance or support of debtors or a dependent of debtors, and to that extent it should be applied to make payments under the plan. National's objection in this regard will be sustained. Debtors, however, will be permitted to amend their plan to cure this deficiency in accordance with the requirements of § 1325(b)(1)(B).

*Debtors' Ability To Complete Plan—Feasibility.*

■ As has been noted above, National offers no argument or authority for its contention that § 1325(a)(6) precludes the court from confirming a plan when debtors admit that they receive outside help in meeting their obligations.

The provisions of § 109(e) govern who may be a debtor under Chapter 13. Eligibility is limited to "individual[s] with regular income," whose debts do not exceed certain limitations, not applicable here. Under § 101(29), "individual with regular income" is defined as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker."

As of the date of the hearing on objections to the confirmation of debtors' plan, debtor Sue Ward was employed and debtor Terry Lane Ward was disabled. At that time, debtors were current in their plan payments, and the court has been provided with no indication or evidence that they will not be able to maintain that currency, except to the extent that the concession that they received assistance from others might constitute such indication or evidence. Neither the extent nor the frequency of such assistance was developed by the parties. The court is therefore being asked to deny confirmation to debtors who are current in their plan payment obligations simply because they concede that they receive help from others, at unspecified intervals and in unspecified amounts. This, the court is unwilling to do. National's objection to the confirmation of debtors' plan on feasibility grounds will therefore be denied.[11]

*Applicability Of Section 506 To Exempt Property.*

■ In its objection based upon the exempt status of the property in question here, National relies heavily upon the unpublished opinion in *In re Scheihing,* No. 90–70410 (Bankr.E.D.Okla., June 19, 1990), in which Judge Ryan opines that he has no

---

**11.** It would appear that the availability for plan payments of the $120 each month which heretofore has been deposited into a savings account, as required by the court's decision on the preceding objection of National, would substantially undercut National's argument in this regard even if it had not been rejected by the court for the reasons stated.

jurisdiction to make § 506 determinations with regard to exempt property.

Judge Ryan reached this conclusion after assuming that debtors had reaffirmed the mortgage obligation in question in an earlier Chapter 7 case. It was pointed out by Judge Ryan that the assumption was necessary, since otherwise the treatment of the remaining solely *in rem* obligation in the subsequent Chapter 13 case would have been precluded, as an impermissible "Chapter 20," by the then recent court of appeals decision in *Home State Bank v. Johnson (In re Johnson)*, 904 F.2d 563 (10th Cir. 1990) ["*Johnson I*"].

On appeal, the order of the bankruptcy court was affirmed, *sub nom. Scheihing v. First National Bank & Trust Company*, No. 90–354–S (E.D.Okla. Dec. 18, 1990). The affirmance was based solely upon *Johnson I*, and the court found that the argument as to whether § 506 could be used to bifurcate the creditor's claim was rendered moot by the court's application of *Johnson I*.

*Johnson I* was subsequently reversed by a unanimous Supreme Court, *sub nom. Johnson v. Home State Bank*, — U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) [*Johnson II*]. In *Johnson II*, it was held that the *in rem* obligation remaining after discharge in a Chapter 7 case of the *in personam* obligation of the debtors could be scheduled and treated in a subsequent Chapter 13 case.

In the circumstances, and in view of the subsequent decision of the court of appeals in *Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410 (10th Cir.1991), discussed below, this court considers *Scheihing, supra*, as less than compelling precedent, and declines to follow it.

The balance of National's reliance on this issue is placed entirely upon decisions in Chapter 7 cases. The most prominent among these is *In re Dewsnup*, 908 F.2d 588 (10th Cir.1990), *aff'g* 87 B.R. 676 (Bankr.D.Utah, 1988), *cert. granted sub nom. Dewsnup v. Timm*, — U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991). In that case, bankruptcy and district court decisions denying § 506 bifurcation and lienstripping to Chapter 7 debtors were affirmed. The court found that § 506 was intended to facilitate valuation and disposition of property in the reorganization and rehabilitative chapters of the Bankruptcy Code, that Congress did not intend to allow Chapter 7 debtors to use that provision to retain abandoned property, and that to do so would be inconsistent with the Congressional preference for reorganization to allow debtors more in liquidation than they would receive in reorganization. The Supreme Court granted certiorari in order to resolve the conflict between the *Dewsnup* decision and *Gaglia v. First Fed. Savs. & Loan Ass'n.*, 889 F.2d 1304 (3rd Cir.1989).

National also relies on this court's *en banc* decision in *In re Shrum*, 98 B.R. 995 (Bankr.W.D.Okla.1989); *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986); and *In re Harvey*, 3 B.R. 608 (Bankr.M.D.Fla.1980).

Not surprisingly, National agrees with these Chapter 7 cases which deny § 506 bifurcation and lienstripping to Chapter 7 debtors. National, however, then takes what amounts to a quantum leap from that position to the conclusion that exempt property in Chapter 13 cases *must be* treated the same as in Chapter 7 cases, citing no additional authority whatever. It should be noted that the court of appeals, in *Dewsnup*, cites and quotes with approval from the analysis in *Shrum* of the intended purpose of § 506(a), in which this court stated that plan proponents in Chapter 11, 12 and 13 "must therefore be permitted to employ § 506(a) in conjunction with the proposed impairment or modification of the rights of the holders of secured claims...." *Dewsnup*, 908 F.2d at 591; *Shrum*, 98 B.R. at 1001.

National's supplemental objection and brief, in which its argument in this regard is made, was filed on May 23, 1991. National makes no mention whatever of the court of appeals decision more than four months earlier in *Eastland Mortgage Co. v. Hart (In re Hart), supra*, 923 F.2d 1410 (10th Cir.1991). *Hart*, which this court considers dispositive of this issue, was decided on January 17, 1991, and a petition for rehearing *en banc* was denied on Feb-

ruary 16, 1991. In that case, involving a mortgage on debtors' homestead, the court, after discussion, held:

> We join the Third and Ninth Circuits in holding that an undersecured mortgage is, for the purposes of the bankruptcy code, two *claims*, and only the secured *claim* is protected by section 1322(b)(2). [Footnote: The term "secured claims" as used in that section is defined by section 506(a), which requires bifurcation.] More importantly, we recognize that while bifurcation, in the literal sense, may be a modification of the *mortgage* represented in the secured and unsecured claims, bifurcation is not, of itself, a "modification" of the secured claim made impermissible by section 1322(b)(2). Indeed, the act of bifurcation recognizes, but does not affect, the secured claim. [Emphasis as in original.]

*Id.* at 1415.

The circuit court decisions referred to are *Hougland v. Lomas & Nettleton Co., (In re Hougland)*, 886 F.2d 1182 (9th Cir. 1989); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1990); *Gaglia v. First Fed. Savs. & Loan Ass'n*, *supra*, (in dictum); and *In re Lewis*, 875 F.2d 53 (3rd Cir.1989). *See also* 5 *Collier on Bankruptcy*, ¶ 1322.06[1][a] at 1322–15 (L. King, 15th ed. 1979 & Supp. Sept. 1990).

In permitting bifurcation and lienstripping of homestead mortgages in Chapter 13, *Hart* reaches the same result reached by this court earlier in *In re Ross*, 107 B.R. 759 (Bankr.W.D.Okla.1989), also not cited by National.

Based upon the foregoing, National's objection to the application of § 506 to exempt property will be denied.

*Failure to meet the "best interest of creditors" test.*

■ Under § 1325, a bankruptcy court must make six affirmative findings in order to confirm a Chapter 13. The "best interest of the creditors test" of § 1325(a)(4) is designed to assure unsecured creditors a recovery in Chapter 13 of at least as much as than they would receive in a hypothetical liquidation under Chapter 7. *Johnson v. Home State Bank*, —— U.S.

——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1224 (8th Cir.1987); *In re Rogers*, 65 B.R. 1018, 1020 (Bankr. E.D.Mich.1986).

In order to make the required determination, the bankruptcy court must determine the net amount which would be available to unsecured creditors in a liquidation, taking into account exempt assets that would be beyond the reach of the creditors, and liens on non-exempt property. *In re Hieb*, 88 B.R. 1019, 1021 (Bankr.S.D.1988). Next, the court must assume the distribution of the funds in accordance with § 726(a), as it would be accomplished in a Chapter 7 liquidation. *Id.* If any creditor would receive more in such a Chapter 7 liquidation, the Chapter 13 plan may not be confirmed. *Zellner*, 827 F.2d at 1224.

In this case, National's claim is secured by an exempt asset, and one which a Chapter 7 trustee would almost certainly abandon early on in the liquidation process in any event. Under *Dewsnup v. Timm (In re Dewsnup)*, *supra*, 908 F.2d 588 (10th Cir.1990), in a hypothetical Chapter 7 liquidation, National would not have an unsecured claim, as debtors would not be permitted to employ § 506 to bifurcate its claim. In Chapter 7, with National's concurrence, the debt could be reaffirmed under § 524(c), in the full amount of the debt remaining. If reaffirmation was not offered, or if an offer was not accepted by National, debtors could simply surrender the property to National. Otherwise, National would seek from the court either relief from the automatic stay under § 362(d) or abandonment under § 554, in order to be permitted to foreclose its mortgage. National argues that upon surrender of the property to it or upon completion of foreclosure, it would deed the property to HUD and would be promptly paid virtually the entire amount remaining due on the debt. Here, if bifurcation and lienstripping are permitted, it stands to receive, over time, only an amount equal to the present market value of the property.

Since National would not have an unsecured claim in a hypothetical Chapter 7

liquidation case due to the application of *Dewsnup, supra*, it would appear that the "best interest of creditors test" of § 1325(a)(4) can have no applicability.

Even if bifurcation and lienstripping were permissible in this jurisdiction in Chapter 7 cases, it is this court's view that the plan nevertheless would be confirmable. The language of § 1325(a)(4) requires merely that the present value of amounts to be distributed under the Chapter 13 plan be no less "than the amount that would be paid on such claim" in a Chapter 7 liquidation. Whatever National's contractual arrangements with HUD may be, payments made to National pursuant to those arrangements could not be said to be amounts "paid on" National's unsecured claim in the hypothetical Chapter 7 case. National would receive nothing on its unsecured claim in that case. It would either receive the property itself, with the right to assert an unsecured claim for any deficiency after it is liquidated, or the then present market value of the property after it was liquidated by or on behalf of the trustee. It is not contended by any party in this case that there would be any likelihood of any dividend to unsecured creditors in a hypothetical Chapter 7 liquidation.

The apparent fact that, in these circumstances, National may not be able to collect on its "insurance policy" from a collateral source not a party to this proceeding, in order to be made whole for what now appears to have been an ill-advised credit decision, should not require this court to depart from the administration of the bankruptcy code in the manner prescribed by Congress and by the judicial decisions discussed above which this court is bound to follow, and with which it is in agreement. *See also In re Ritchie,* BK–90–8923–BH and *In re Carrasquillo,* BK–91–676–BH, Order Denying Objection to Confirmation of Chapter 13 Plans, at 3 (June 12, 1991).

## CONCLUSION

Based upon the foregoing, the objections of National, save and except its objection based upon the failure of debtors to provide for the application of all of their disposable income for plan payments, and the objection of the Chapter 13 trustee, will be overruled. The excepted objection will be sustained, and debtors will be granted ten days from the date hereof within which to amend their plan in conformity with the views expressed herein. If such amendment is timely made, and the Chapter 13 trustee is of the view that it complies with this court's opinion, an order confirming debtors' plan, as so amended, shall be presented to the court for entry no later than thirty days from the date hereof. Should debtors fail or refuse to amend their plan as directed within ten days from the date hereof, confirmation of the presently proposed plan will be denied, and debtors shall have twenty days debtors thereafter within which to dismiss their Chapter 13 case or convert the same to a case under Chapter 7. Absent an election by debtors within such time, the case will be dismissed. Should debtors timely amend their plan in a manner which the Chapter 13 trustee believes to be not in accordance with the views expressed herein, the Chapter 13 trustee shall forthwith seek and obtain a date and time for a prompt hearing before this court, following which the issue will be resolved.

IT IS SO ORDERED.