**In re Stephen J. SILLS, Debtor.**

**Bankruptcy No. 2–89–06117.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 17, 1991.

Lee C. Mittman, Columbus, Ohio, for Debtor.

Ralph E. Dill, Columbus, Ohio, for Ameritrust Co.

Frederick L. Ransier, Columbus, Ohio, Chapter 7 Trustee.

## OPINION AND ORDER ON MOTION TO REOPEN

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court on the Debtor's Motion to Reopen this case in order to value the security interest of Ameritrust in the Debtor's residential real estate, and Ameritrust's Memorandum Contra thereto. A hearing was held on this Motion on December 17, 1990. Present were Lee Mittman representing the Debtor, and Ralph Dill representing Ameritrust. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This case is a core proceeding arising under 28 U.S.C. § 157(b)(2)(*o*).

### STATEMENT OF FACTS

The Debtor, Stephen Sills, filed a Chapter 7 bankruptcy petition on October 30, 1989 and was examined by Ameritrust Company N.A., pursuant to Bankruptcy Rule 2004 on January 15, 1990. The Debtor and Ameritrust engaged in negotiations concerning the valuation of the Debtor's residential real estate from March 26, 1990, until August, 1990, when their negotiations broke down.

The real estate consists of the residence of the Debtor and his non-filing spouse. The real estate is alleged by the Debtor to have a fair market value of $89,000. The property is subject to a first mortgage with an amount due of $69,418.60 as of April 15, 1990. There is a tax lien against the property for delinquent Franklin County Real estate taxes in the amount of approximately $1700. The real estate is also subject to a judgment lien in the amount of $220,-911.54 which Ameritrust obtained on June 14, 1989.

The Court closed the case on October 16, 1990, after the trustee filed his account and report reflecting that this was a no-asset case, thereby effecting abandonment of the Debtor's residence. The Debtor contends that at that time, he was engaged in drafting a motion for the valuation of the claim of Ameritrust under 11 U.S.C. § 506, with the intent to avoid the undersecured portion under 11 U.S.C. § 506(d). The Debtor promptly filed the Motion to Reopen on October 22, 1990.

### DISCUSSION

Ameritrust objects to the Motion to Reopen under the doctrine of laches. The rule accepted by an overwhelming majority of courts today is that, pursuant to § 350(b) and B.R. 5010, the avoidance of liens is grounds for reopening a case unless the creditor has been unduly prejudiced by delay on the debtor's part. 2 COLLIER ON BANKRUPTCY, para. 350.03, (15th ed. 1990). In *Hawkins v. Landmark Finance Co.*, 727 F.2d 324 (4th Cir.1984), the Fourth Circuit Court of Appeals held that the creditor was prejudiced by the debtor's failure to reopen the case for eight months, by which time the creditor had incurred court costs and counsel fees pursuing foreclosure proceedings in state court. The Fourth Circuit was specifically unimpressed with the argument that prejudice would accrue solely by virtue of the creditor losing its security interest as a result of reopening. *Id.*, at 327.

Unlike the *Hawkins* case, Ameritrust has not shown prejudice. Because of the Debtor's prompt filing of the Motion to reopen, Ameritrust has not incurred any additional costs in reliance on the Debtor's failure to previously challenge the viability of Ameritrust's lien. Furthermore, *Hawkins* specifically decries the loss of a security interest as being prejudicial. Realistically, Ameritrust does not even suggest that it has been prejudiced, but rather Ameritrust seems to rely on some sort of

variant of the equitable doctrine of laches where, because the debtor "chose to sit upon his rights, ... he should now lose them." Memorandum Contra, p. 1. But laches is not a temporal limitation. Rather, it is a question of inequities founded upon some change in the condition or relations of the parties. *Matter of Swanson,* 13 B.R. 851, 855 (Bankr.D.Idaho 1981). In the present case there has been no such change. Therefore, it is within the discretion of this Court to reopen the case.

The second argument that Ameritrust proffers is that it is pointless to reopen the case because the relief requested by the Debtor under § 506 cannot be granted. The Court agrees with this proposition; therefore, it is of prime importance to determine whether lien valuation and avoidance under § 506 is a remedy which can be invoked by the Debtor.

The remedy sought by this Debtor is generally sought under § 522(f) of the Bankruptcy Code. However, the Sixth Circuit Court of Appeals held that lien avoidance under § 522(f) is unavailable to Ohio Debtors in absence of some form of involuntary execution by the lien holder. *Ford Motor Credit Corp. v. Dixon,* 885 F.2d 327 (6th Cir.1989). Therefore, local practitioners have pursued lien avoidance under § 506(a). Consequently, the Court's analysis requires a comparison of § 506 and § 522 of the Bankruptcy Code to discern if lien avoidance under § 506 is analogous to lien avoidance under § 522(f).

■ A comparison of the property interests involved in § 506(a) and § 522(f) reveals why they should be treated differently. Those sections provide:

§ 506. Determination of secured status
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditors' interest in the estate's interest in such property, or to the extent of the amount subject to setoff as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to

setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

§ 522. Exemptions
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; ....

Section 522(f) deals with "the interest of the debtor in property", while § 506(a) concerns itself with "property in which the estate has an interest." This difference is of substantial import when considering whether abandoned property can be addressed under the respective Code sections.

The effect of abandonment by a trustee, whether accomplished by affirmative act under 11 U.S.C. § 554(a) or (b) or by failure of administration under subparagraph (c), is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate.

4 COLLIER ON BANKRUPTCY para. 554.02 at pp. 554–57, 554–8. When property is abandoned, it ceases to be property of the estate and reverts to the debtor. *See Brown v. O'Keefe,* 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937). Therefore, abandoned property, being property of the debtor, is the specific type of property contemplated under § 522(f). Similarly, § 506(a) would seem, by negative implication, to specifically exclude abandoned property (i.e., property which is no longer part of the estate).

■ Recent cases which have considered whether the avoidance of liens under § 506 is appropriate with abandoned property, are split as to the role of § 506(d) lien avoidance in a chapter 7 liquidation. *See Gaglia v. First Fed. Savings & Loan Asso.,* 889 F.2d 1304 (3rd Cir.1989); *Dewsn-*

*up v. Timm (In re Dewsnup)*, 908 F.2d 588 (10th Cir.1990).

The *Gaglia* court observed that, under the majority view, § 506(d) authorizes a chapter 7 debtor to avoid liens on real property, citing *In re Garnett*, 88 B.R. 123 (Bankr.W.D.Ky.1988); *aff'd*, 99 B.R. 757 (W.D.Ky.1989). *See also In re O'Leary*, 75 B.R. 881 (D.Or.1987); *In re Worrell*, 67 B.R. 16 (C.D.Ill.1986); *In re Clevering*, 52 B.R. 56 (N.D.Iowa 1985); *In re Lyons*, 46 B.R. 604 (N.D.Ill.1985); *In re Gibbs*, 44 B.R. 475 (D.Minn.1984); *In re Bracken*, 35 B.R. 84 (E.D.Pa.1983); *In re Brace*, 33 B.R. 91 (S.D.Ohio 1983); *In re Tanner*, 14 B.R. 933 (W.D.Pa.1981). *Gaglia* went one step further, allowing the avoidance of liens by the debtor on abandoned property. *See also In re Richardson*, 121 B.R. 546 (Bankr.S.D.Ill.1990); *In re Zlogar*, 101 B.R. 1 (Bankr.N.D.Ill.1989).

The *Gaglia* court noted that no court of appeals had dealt directly with this issue. *Gaglia*, therefore, was the first court of appeals to pass on the breadth of § 506 in light of the phrase "property in which the estate has an interest." The court rejected the creditor's argument that the overall statutory scheme indicated Congress did not intend for § 506 to apply to property which is not administered by the estate:

> We do not read this limitation into § 506. On its face, that section contains no such restriction. Congress was surely aware that some estates would contain overencumbered property with nothing available for unsecured creditors. It certainly realized that in many such cases the trustee might decide not to liquidate the property. Yet Congress did not limit § 506 to cases in which it aids the administration of the estate.

889 F.2d at 1309.

The *Gaglia* court rejected three other arguments in deciding to permit the avoidance of liens on abandoned property by the debtor. First, that the use of § 506 to strip down abandoned property is inconsistent with redemption under § 722; second, that § 506 lien avoidance would discourage the use of the rehabilitative chapters; and finally, that it was inequitable to allow Chapter 7 debtors to avoid liens. 889 F.2d at 1310–11.

By contrast, the *Dewsnup* court stated that a strong minority views such lien avoidance as "inconsistent with the intended purpose of the section and is unfair to lienholders." 908 F.2d at 589, citing *In re Shrum*, 98 B.R. 995 (Bankr.W.D.Okla. 1989); *In re McLaughlin*, 92 B.R. 913 (Bankr.S.D.Cal.1988); *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988); *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986). *See also In re Verma*, 91 B.R. 17 (W.D.Pa. 1987); *In re Smith*, 79 B.R. 650 (D.Md. 1987); *In re Cordes*, 37 B.R. 582 (C.D.Cal. 1984); *In re Mahaner*, 34 B.R. 308 (W.D.N. Y.1983); *In re Harvey*, 3 B.R. 608 (M.D. Fla.1980). The *Dewsnup* court felt it essential to recognize that abandoned property is property not administered by the estate. 908 F.2d at 590. *Dewsnup* rebutted several of the arguments the *Gaglia* court relied upon to conclude that § 506 can be applied to abandoned property. The most relevant distinction is the opposing view as to Congressional intent. *Dewsnup* explicitly rejected the court's interpretation of § 506 in *Gaglia:*

> We reject this approach for two reasons. First, we reject the notion that section 506(d) must be read in isolation. It is a fundamental precept of statutory construction that '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (quoting *United States v. Boisdore's Heirs*, 8 How. 113, 121, 12 L.Ed. 1009 (1850)). Second, the Third Circuit's rationale does not adequately recognize the affect of abandonment with its resulting consequences, including reversion of the property to prebankruptcy status. The reasoning in *Gaglia* might apply if the language in the statute was 'property of the estate' rather than 'property in which the estate has an interest.' It is true that pursuant to 11 U.S.C. § 541, all property in which the debtor has a legal or eq-

uitable interest becomes part of the bankruptcy case at the time a petition is filed. *See In re Harvey,* 3 B.R. 608, 609 (Bankr.M.D.Fla.1980). In this case, however, the operative phrase is 'interest of the estate.' Following abandonment, the estate no longer has an interest, even though it did at one time. To construe this section otherwise would defeat the purpose behind the abandonment provision and run counter to the plain language of the Code.

908 F.2d at 591.

The Court finds the Tenth Circuit's decision to be the better reasoned one. The *Dewsnup* court conducted a more thorough analysis of the overall statutory scheme and the peculiar terminology of § 506(a). The mere conclusory statements of *Gaglia* raise questions whether the analysis by the *Gaglia* court is thorough enough to warrant reliance on it.

As the *Dewsnup* court indicated, the court is bound by the language of § 506, which is plain. When the statutory language is clear, it is conclusive, absent "clearly expressed legislative intent to the contrary." *Dewsnup,* 908 F.2d at 591, quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The estate has no interest in abandoned property; therefore § 506 cannot be utilized to avoid a lien on abandoned property. Since the resolution of this case turns upon the peculiar phraseology of "property in which the estate has an interest" in § 506, the other arguments which *Gaglia* rejected would not change this result. Even if we were to assume, *arguendo,* that the *Gaglia* court was correct in concluding that § 506 can be read *in pari materia* with § 722, that the suggested use of § 506 would not discourage the use of the rehabilitative chapters, and that it is equitable to allow chapter 7 debtors to avoid liens, the result is unchanged. None of these arguments impacts the application of § 506 on abandoned property.

In accordance with the foregoing, the Court find the remedies of valuation and avoidance of liens on abandoned property under § 506 are not available to the Debtor. Therefore, the Debtor's Motion to Reopen hereby is DENIED.

IT IS SO ORDERED.