**IN RE George Dib HABER, Debtor(s)**

Case No. 14–57719

United States Bankruptcy Court,
S.D. Ohio, Eastern Division.

Signed March 10, 2016

Entered 03/11/2016

Michael A. Cox, Columbus, OH, for Debtor.

***ORDER OVERRULING TRUSTEE'S OBJECTION TO AMENDED CLAIM OF EXEMPTION IN REAL ESTATE LOCATED AT 5317 AGATE PLACE, LEWIS CENTER, OHIO 43035***

C. Kathryn Preston, United States Bankruptcy Judge

This cause came on for hearing on October 22, 2015, upon Trustee's Objection to

Amended Claim of Exemption in Real Estate located at 5317 Agate Place, Lewis Center, Ohio 43035 (the "Objection") (Doc. # 90) filed by the Chapter 7 Trustee (the "Trustee") and Debtor's Response to Trustee's Objection to Amended Claim of Exemption (the "Response") (Doc. # 93) filed by the Debtor, George Dib Haber (the "Debtor"), Support Documents Related to Debtor's Response to Trustee's Objection to Amended Claim of Exemption (the "Debtor's Support Document") (Doc. # 96) filed by the Debtor, Trustee's Reply Memorandum to the Debtor's Response to His Objection to Debtor's Claim of Exemption (the "Reply") (Doc. # 98) filed by the Trustee, the Trustee's Supplemental Support Document to the Debtor's Response to His Objection to Debtor's Claim of Exemption (the "Trustee's Support Document") (Doc. # 102) filed by the Trustee, and Debtor's Response to Trustee's Supplemental Support Document (the "Debtor's Supplemental Document") (Doc. # 104) filed by the Debtor. Present at the hearing were Brent Stubbins representing the Trustee and Michael Cox representing the Debtor.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05–02 entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

The Debtor previously owned residential real property located at 5317 Agate Place, Lewis Center, Ohio 43035 (the "Real Property"). During the pendency of the Chapter 7 bankruptcy case, the Trustee formally abandoned the Real Property. Thereafter, the bankruptcy case was closed. The Real Property was sold at foreclosure sale, which resulted in a surplus of sale proceeds in the amount of $80,593.21 (the "Surplus Proceeds"). The Chapter 7 bankruptcy case was reopened at the Trustee's request, in order to allow the Trustee to administer the Surplus Proceeds. The Debtor subsequently filed an amended Schedule C to claim a homestead exemption in the Real Property pursuant to Ohio Revised Code § 2329.66(A)(1). The Trustee asserts that the Surplus Proceeds are property of the bankruptcy estate and objects to the Debtor's claim of exemption in the Real Property.

## I. Background and Findings of Fact

Upon arguments presented and evidence adduced at the hearing, the Court finds and concludes as follows:

The Debtor filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code on November 03, 2014, and later converted the case to one under Chapter 7 of the Bankruptcy Code on January 7, 2015. On the date of the filing of the Petition, the Debtor owned the Real Property and disclosed it on Schedule A—Real Property ("Schedule A") (Doc. # 1). The Debtor, however, did not claim an exemption in the Real Property on Schedule C—Property Claimed as Exempt ("Schedule C") (Doc. # 1). As of the date of the Petition, the Debtor indicated on Schedule A that the value of the Real Property was $360,500.00 [1] and subject to liens in the amount of $617,627.61 [2]. On

---

1. On November 19, 2014, the Debtor filed his Appraisal of Real Property (Doc. # 16) evidencing the value of the Real Property in the amount of $330,000 based on the appraisal that was filed in the state court foreclosure action. On December 8, 2014, a secured creditor, Home Ally Financial II, LLC filed its appraisal of the Real Property indicating the value as $400,000.

2. The Debtor filed Schedule D—Creditors Holding Secured Claims ("Schedule D")

January 8, 2015, the day after this case converted to one under Chapter 7 of the Bankruptcy Code, the Debtor filed an amended Schedule A (Doc. # 27) which did not alter the value of the Real Property or the amount of liens thereon.[3]

On January 22, 2015, Home Ally Financial II, LLC ("Home Ally") filed Amended Motion for Relief from Stay and for In Rem Relief pursuant to 11 U.S.C. § 362(d)(4) (the "Motion for Relief from Stay") (Doc. # 32) seeking relief from the automatic stay to pursue its rights against the Real Property, including foreclosure remedies. On the same day that the Motion for Relief from Stay was filed, Home Ally also filed Home Ally Financial II, LLC's Request for Abandonment of Property (the "Request for Abandonment") (Doc. # 33) requesting that the Trustee abandon the Real Property on the basis that the Real Property was over-encumbered by liens and there was no equity in it for the benefit of the bankruptcy estate. There were no objections filed in response to the Motion for Relief from Stay, and this Court entered an Order Granting Motion for Relief from the Automatic Stay (the "Relief from Stay Order") (Doc. # 34) on February 18, 2015. The Relief from Stay Order granted relief from the automatic stay so that Home Ally could pursue its in rem remedies under non-bankruptcy law regarding the Real Property. On February 25, 2015, Trustee's Abandonment of Property (the "Abandonment") (Doc. # 42) was filed (by Home Ally on behalf of the Trustee) whereby the Trustee abandoned the Real Property. Thereafter, the Court entered the Discharge of Debtor (Doc. # 56) on April 15, 2015, and the bankruptcy case was closed on May 7, 2015.

Upon termination of the automatic stay, Home Ally pursued its foreclosure remedies in Delaware County Common Pleas Court (the "State Court"), and the Real Property was sold pursuant to a sheriff's sale (the "Sheriff's Sale") conducted on April 15, 2015. Prior to the Sheriff's Sale, the first mortgage holder failed to file an answer in response to the foreclosure complaint filed against it in the State Court. As a result, the first mortgage holder's lien was extinguished and no longer entitled to be paid from the Sheriff's Sale proceeds. This resulted in the Surplus Proceeds. On May 11, 2015, the State Court entered a Journal Entry Confirming Sale, Ordering Deed and Distributing Sale Proceeds (the "Confirming Order") which confirmed the sale of the Real Property to Raymond Financial Services, Inc. for the amount of $320,000. The Confirming Order also provided for distribution of the sale proceeds. The Confirming Order revealed that after payment of lienholders entitled to be paid, and fees and costs of the foreclosure proceeding, there would remain on hand with the Sheriff, the sum of $80,593.21. On the same day, the State Court also entered a Judgment Entry (the "Show Cause Order") providing, among other things, that any party may show cause by June 5, 2015, why the balance of the Surplus Proceeds should not be returned to the Debtor.

On May 18, 2015, the Debtor filed a Motion to Reconsider Journal Entry Confirming Sale, Ordering Deed and Distributing Sale Proceeds (the "Motion to Re-

---

(Doc. # 1) listing the creditors holding secured claims against the Real Property by name and address and the amount of each creditor's claim. Schedule D reflected that the total outstanding balance of claims secured by the Real Property was $617,627.61.

**3.** The Debtor changed the information on amended Schedule A (Doc. # 27) to reflect that the Real Property was owned by the Debtor solely instead of jointly as indicated in the initial Schedule A (Doc. # 1).

consider") in the State Court requesting that it reconsider the Confirming Order on the basis that it provided payment to the judgment lien creditors prior to making allowance for the Debtor's homestead exemption in the amount of $132,900. On May 22, 2015, the Trustee filed Bankruptcy Trustee's Motion to Intervene and Motion for Court to Disburse Foreclosure Proceeds to Trustee wherein the Trustee requested that the State Court allow him to intervene in the matter and disburse the Surplus Proceeds to him on the basis that they are property of the bankruptcy estate and the Trustee's claim in the Surplus Proceeds has priority over any claim of the Debtor. The Trustee and the Debtor filed objections to each other's request for relief. On July 13, 2015, the State Court entered Judgment Entry (1) Denying defendant George Haber's 5/18/15 Motion to Reconsider, (2) Granting the Bankruptcy Trustee's 5/22/15 Motion to Intervene, and (3) Granting the Bankruptcy Trustee's 5/22/15 Request that the Surplus Funds Be Paid to the Trustee (the "Order on Reconsideration and Intervention"). The Order on Reconsideration and Intervention denied the Debtor's homestead exemption under Ohio Revised Code § 2329.66(A)(1)(b) because he failed to timely assert same in the foreclosure proceeding and granted the Trustee's request to intervene and receive the Surplus Proceeds for the benefit of the Debtor's bankruptcy estate.

While the Trustee and the Debtor were litigating issues in the State Court, the Trustee filed a Motion for an Order Reopening the Estate and Directing Appointment of Trustee (the "Motion to Reopen") (Doc. # 61) before this Court requesting that the bankruptcy case be reopened to administer property of the estate for the benefit of creditors. Over the objection by the Debtor, the Court granted the Trustee's Motion to Reopen and entered the Order to Reopen Case with Appointment of Trustee and Dispensing with Notice to Reopen and Deferring Filing Fee Pending Recovery of Assets (the "Order Reopening Case") (Doc. # 67) on June 4, 2015. Thereafter, on June 9, 2015, the Debtor filed an amended Schedule C claiming a homestead exemption in the Real Property (and thus, the proceeds of sale thereof) in the amount of $132,900.00 pursuant to Ohio Revised Code § 2329.66(A)(1). The Trustee filed an objection.

## II. Discussion

The filing of a petition for relief under the Bankruptcy Code creates a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code allows debtors to exempt certain property from the bankruptcy estate pursuant to 11 U.S.C. § 522(b). *Holland v. Star Bank, N.A.* (*In re Holland*), 151 F.3d 547, 548 (6th Cir.1998). Pursuant to § 522(b)(2), a debtor may claim federal exemptions set forth in § 522(d) so long as the applicable state has not "opted-out" and enacted its own exemptions. Ohio has elected to opt-out of the federal exemptions and create its own set of exemptions. *See* Ohio Rev. Code Ann. § 2329.662.

"[T]he objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr.P. 4003(c). ▬▬ A party objecting to claimed exemptions must prove that the exemption is not properly claimed by a preponderance of the evidence.... Upon the introduction of sufficient evidence to rebut the prima facie validity of the exemption, the burden shifts to the debtors to demonstrate that the exemption is proper. If, however, the trustee fails to carry the burden of proving by a preponderance of the evidence that the

exemption should be disallowed, the exemption will stand.

*In re Kimble,* 344 B.R. 546, 551 (Bankr. S.D.Ohio 2006) (internal quotation marks and citations omitted).

In this case, the Debtor claimed a homestead exemption in the Real Property pursuant to Ohio Revised Code § 2329.66(A)(1)(b). Ohio's homestead exemption provides in pertinent part as follows:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(1) ...

(b) [T]he person's interest, not to exceed [$132,900][4], in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.

Ohio Rev.Code Ann. § 2329.66(A)(1)(b). Before the Court can determine if the Debtor's claim of exemption in the Real Property is proper, it must first determine whether it is property of the bankruptcy estate.

## A. Property of the Bankruptcy Estate

The filing of a petition for relief under the Bankruptcy Code creates a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Property of the estate upon conversion from chapter 13 to a case under another chapter consists of "property of the estate, as of the date of filing the petition, that remains in the possession of or is under the control of the debtor on the date of conversion" unless there is evidence of bad faith. 11 U.S.C. § 348(f)(1)(A) & (2). The schedules filed before the conversion "shall be deemed filed in the converted case unless the court directs otherwise." F.R.B.P. 1007(c).

*Batten v. Cardwell (In re Batten),* 351 B.R. 256, 260 (Bankr.S.D.Ga.2006). On the date of the filing of the Petition in this case, the Debtor listed the Real Property on Schedule A and indicated the value of it was $360,500.00. The Debtor also indicated the Real Property was subject to liens in the amount of $617,627.61. After the date this case converted from one under Chapter 13 to one under Chapter 7, the Debtor filed an amended Schedule A solely to change his representation that the Real Property was only owned by him and not jointly with his wife; all other information remained the same. The Real Property was property of the bankruptcy estate because the Debtor owned it at the time the Petition was filed and continued to own it after the case converted, and the parties do not dispute this fact.

4. Ohio law provides for adjustment of the exemption amount:

(B) On April 1, 2010, and on the first day of April in each third calendar year after 2010, the Ohio judicial conference shall adjust each dollar amount set forth in this section to reflect the change in the consumer price index for all urban consumers, as published by the United States department of labor, or, if that index is no longer published, a generally available comparable index, for the three-year period ending on the thirty-first day of December of the preceding year.

Ohio Rev.Code Ann. § 2329.66(B). The adjusted dollar amounts do not appear in the text of the statute; however, that information may be accessed by visiting the Ohio Judicial Conference website. Ohio Judicial Conference, http://www.ohiojudges.org/ (search and follow "Exemptions" hyperlink).

The parties, however, do dispute whether the Surplus Proceeds constitute property of the bankruptcy estate. The Trustee asserts that the Surplus Proceeds are property of the bankruptcy estate because they were never listed by the Debtor in his bankruptcy schedules, and thus, could not have been abandoned. In contrast, the Debtor argues that the Surplus Proceeds do not constitute property of the bankruptcy estate because the proceeds arose from the sale of the Debtor's Real Property which was abandoned by the Trustee.

### B. Effect of Abandonment

■ 11 U.S.C. § 554 governs abandonment of property of the estate. Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). "The effect of abandonment by a trustee, whether accomplished by affirmative act under 11 U.S.C. § 554(a) or (b) or by failure of administration under subparagraph (c), is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate." *In re Sills,* 126 B.R. 974, 976 (Bankr.S.D.Ohio 1991). "When property is abandoned, it ceases to be property of the estate and reverts to the debtor." *Sills,* 126 B.R. at 976 (citing *Brown v. O'Keefe,* 300 U.S. 598, 602, 57 S.Ct. 543, 81 L.Ed. 827 (1937)).

■ [T]he trustee in bankruptcy is not obliged to accept property so encumbered with liens as to be burdensome to the estate. As a rule, the trustee should abandon or disclaim all assets encumbered in excess of their value. Abandonment by the trustee of an asset immediately revests title to that asset in the bankrupt. Once he has elected to abandon an asset, the trustee is absolutely precluded from later reclaiming it, even if a subsequent increase in its value would make it of benefit to the estate.

■ Since abandonment has no effect upon the validity of the liens encumbering the property, the practical effect of the election is to remove the asset entirely from the jurisdiction of the bankruptcy court. It is simply a declaration by the trustee that the bankrupt estate wants nothing further to do with the property and that the lienors are free to proceed against it just as they normally would under applicable state law.

*In re Polumbo,* 271 F.Supp. 640, 642–643 (W.D.Va.1967) (citations omitted). "The general rule in this area is well settled— once a trustee abandons property, the abandonment is irrevocable." *Huntington Nat'l Bank v. Hunter (In re Hunter),* 76 B.R. 117, 118 (Bankr.S.D.Ohio 1987) (citations omitted). "The rationale for the general rule is that once an asset has been abandoned, it is no longer part of the estate and is effectively beyond the reach and control of the trustee. Courts have also noted the policy of preserving finality." *DeVore v. Marshack (In re DeVore ),* 223 B.R. 193, 198 (9th Cir. BAP 1998) (citations omitted).

Under the general rule, the abandonment of an asset of a bankruptcy estate pursuant to 11 U.S.C. § 554 is irrevocable. Courts reason that once abandoned, property passes out of the estate. The trustee (or, here, the bankruptcy court) may not reassert control over the property in light of subsequent events— for example, if it later becomes clear that a piece of property has greater value than was previously believed. However, there is an exception to the general rule. When an asset is not disclosed in the schedule of assets, the abandonment is revocable.

*Kloian v. Kelley* (*In re Kloian*), 115 Fed. Appx. 768, 769 (6th Cir.2004) (citations omitted).

■ The exceptions to this rule appear in cases where a potential asset is concealed from the trustee or information concerning the potential asset has not been properly disclosed so that the trustee can make an informed decision concerning an abandonment. In cases where the property has been scheduled by the debtor and information concerning the asset has been properly disclosed to the trustee, if the property has been abandoned in accordance with the applicable provisions of the Bankruptcy Code and Rules, the title to the property revests back to the debtor as if it had never been held by the trustee.

*Hunter,* 76 B.R. at 118 (citations omitted).

■ On February 25, 2015, the Trustee in this case abandoned the Real Property pursuant to 11 U.S.C. § 554(a) as evidenced by the Abandonment that was filed. The Debtor disclosed the Real Property on Schedule A and provided the full street address, the current value of the Debtor's interest in the Real Property, and the amount of secured claims related to the Real Property. Upon conversion of the case, the Debtor filed an amended Schedule A that still listed the Real Property as an asset owned by him that included all the same information as the initial Schedule A.[5] Clearly, the Debtor did not conceal the Real Property from the Trustee. In addition, the information concerning the Real Property was properly disclosed as it reflected a value ($360,500) in an amount that was more than the amount stated in the Debtor's appraisal, albeit less than the amount stated in Home Ally's appraisal. Furthermore, Schedule D cor-

roborated the amount of the secured claims against the Real Property as indicated on Schedule A: the total amount was the same on both. Based on these facts, the Court finds that the Debtor did not conceal the Real Property and the information was properly disclosed regarding the asset in such a way that the Trustee could make an informed decision regarding abandonment in this case. Based on the foregoing, the abandonment of the Real Property was irrevocable which removed the Real Property entirely from the jurisdiction of the bankruptcy court.

Once the Real Property was abandoned and removed entirely from the jurisdiction of the bankruptcy court, the same revested back to the Debtor as if it had never been held by the Trustee. *See Hunter,* 76 B.R. at 118. In addition, any lienor, including but not limited to Home Ally, was permitted to proceed with its remedies related to the Real Property, such as foreclosure, as it normally would under applicable state law. *See In re Polumbo,* 271 F.Supp. 640, 643 (W.D.Va.1967). Upon termination of the automatic stay and abandonment of the Real Property in this case, Home Ally pursued its foreclosure remedies in the State Court. The Real Property was sold pursuant to the Sheriff's Sale for the sale price of $320,000, which resulted in the Surplus Proceeds. The Surplus Proceeds, however, are not property of the bankruptcy estate because the Real Property had been abandoned previously by the Trustee. Any interest of the Trustee or the bankruptcy estate in the Real Property irrevocably terminated once the asset was abandoned on February 25, 2015. The Sheriff's Sale did not occur until April 15, 2015 which was almost a month after the Real Property was no longer part of the bank-

---

5. As noted previously, the only change the Debtor made was to reflect that the Real Property was owned by the Debtor solely by

him, instead of jointly with his spouse as indicated in the initial Schedule A.

ruptcy estate. Accordingly, it is of no consequence to the Trustee or the bankruptcy estate that the procedural mechanisms present in the State Court foreclosure proceeding (i.e., the failure of a lien holder to appear and receive payment) resulted in the Surplus Proceeds because all interests in the Real Property including any entitlement to any excess proceeds, had revested in the Debtor at the time of the Abandonment. This Court has no jurisdiction over the Surplus Proceeds because the Trustee abandoned the Real Property as of February 25, 2015.

## C. Debtor's Duty to Supplement Bankruptcy Schedules

The Trustee argues that the Debtor had a continuing duty to list the Surplus Proceeds in his bankruptcy case once he became aware of their existence. "The Bankruptcy Code and Rules require that the schedules contain information that is accurate as of the date the petition is filed. A debtor who learns that the information supplied in his or her schedules was inaccurate *as of the petition date* has a duty to correct that information...." *Vasquez v. Adair (In re Adair)*, 253 B.R. 85, 91 n. 16 (9th Cir. BAP 2000) (emphasis added) (citation omitted). "[N]othing in the Bankruptcy Code or Rules imposes upon a debtor the ongoing duty of supplementation advocated by the Trustee." *Vasquez*, 253 B.R. at 90 (rejecting the trustee's contention that debtors have a duty to provide ongoing information "analogous to the duty imposed on a party to supplement responses to discovery requests when the party learns that his or her prior response is in some material respect incomplete or incorrect, even though the response was complete and accurate when made").

The Bankruptcy Code and Rules require that a debtor supplement the information in his or her schedules only in limited circumstances. Section 541(a)(5) pro-

vides that certain types of property not implicated here become property of the estate if acquired by a debtor within 180 days of the filing of the bankruptcy petition. Rule 1007(h) requires that a debtor file a supplemental schedule in the event that he or she acquires property covered by the provisions of § 541(a)(5). Thus, the Bankruptcy Code specifically requires that a debtor supplement the information contained in his or her schedules in certain prescribed circumstances. If Congress or the Bankruptcy Rule drafters had intended to impose a broader duty of ongoing disclosure, either could have expressly so provided.

. . .

[Furthermore, 11 U.S.C. § ] 521 sets forth a debtor's duties. Subsection (3) requires that a debtor cooperate with the trustee as necessary to enable the trustee to perform his or her duties. Subsection (4) requires that a debtor turn over to the trustee all property of the estate and any recorded information related to property of the estate. Absent a trustee's express request for additional or ongoing information, § 521 does not impose upon a debtor the ongoing obligation to provide information to the trustee with regard to assets that the Debtor clearly disclosed in her bankruptcy schedules.

*Vasquez*, 253 B.R. at 90 (footnotes omitted). In this case, the Debtor scheduled his ownership interest in the Real Property indicating the fair market value and the aggregate amount of secured claims related to it. The Trustee has not asserted that this information was incorrect or otherwise misleading. Furthermore, nothing in the record indicates that the Debtor otherwise learned that any of the information he supplied in his schedules was inaccurate as of the petition date.

The Debtor did not have a duty to supplement his schedules under 11 U.S.C. § 541(a)(5) because the Surplus Proceeds are not property that was acquired by bequest, devise, inheritance, a settlement agreement with his spouse, a divorce decree, or a life insurance or death benefit plan. Nothing in the record before this Court suggests that the Debtor knew what the ultimate sale price would be at the Sheriff s Sale or that the Surplus Proceeds existed at the time he completed his bankruptcy schedules. And indeed, Debtor could not have known about the Surplus Proceeds as of the petition date because the Sheriff's Sale did not occur until five months after the bankruptcy case was filed. Imposing a general ongoing obligation of supplementation in the absence of an express provision in the Bankruptcy Code or the Rules requiring same is inappropriate in this case, and this Court declines the invitation by the Trustee to do so. As such, the Court finds that the Debtor did not have a duty to amend his bankruptcy schedules once the State Court determined the Sheriff's Sale resulted in the Surplus Proceeds.

The Trustee further contends that the Surplus Proceeds are personalty and should be listed on Schedule B—Personal Property ("Schedule B") and because the Debtor failed to file an amended Schedule B disclosing same, the Trustee did not knowingly abandon them. The Trustee relies upon *Slone v. Anderson (In re Anderson )*, 511 B.R. 481 (Bankr.S.D.Ohio 2013) to support his position.

In the *Anderson* case, the debtors' real property was sold at a sheriff's sale prior to the date the debtors filed bankruptcy under Chapter 7 of the Bankruptcy Code. In addition, the state court entered an order prior to the debtors' bankruptcy

case being filed that indicated among other things that a remaining balance or surplus proceeds existed in the amount of $74,343.23 that was being held by the state court until further order. The debtors, in *Anderson*, did not list any real property or proceeds from the sale of real property in their bankruptcy schedules. The debtors did identify the foreclosure action involving their real property in their Statement of Financial Affairs, however, the debtors did not indicate there was any equity in the real property of any proceeds owed to the debtors from the sheriff's sale. The trustee even examined the debtors at the meeting of creditors about the foreclosure proceeding, and they indicated they were not owed any proceeds.[6] The trustee in the *Anderson* case eventually signed an agreed order granting the secured creditor relief from the automatic stay to proceed with finalizing the foreclosure proceedings. The trustee eventually concluded that there were no assets to distribute to creditors and filed a report of no distribution. Thereafter, the debtors received their bankruptcy discharge, and the case closed shortly after that. A funds locator discovered the sale proceeds that were being held by the state court and contacted the debtors regarding same. The funds locator (through an attorney) requested the state court distribute the sale proceeds to it on behalf of the debtors. The trustee eventually learned about the sale proceeds and requested, among other things, that the bankruptcy court reopen the debtors' bankruptcy case to administer the sale proceeds for the benefit of the creditors. In so doing, the *Anderson* court determined that the foreclosure proceeds constituted property of the estate that had not been abandoned by the trustee.

---

**6.** The facts in the *Anderson* case indicate the debtors were not aware of the sale proceeds

until much later when a funds locator brought it to their attention.

The Trustee's reliance on *Anderson* is misplaced. First, and most importantly, the foreclosure sale proceeds present in the *Anderson* case existed before the debtors filed their bankruptcy case so they were clearly property of the bankruptcy estate as of the date of the petition and should have been listed as an asset in their bankruptcy case. And secondly, the trustee in that case did not abandon the undisclosed asset. The *Anderson* court specifically held as follows:

> It is significant that the Debtors did not schedule the funds as an asset or reveal the funds at the § 341 meeting because property that is not scheduled by the Debtors or administered by the Trustee is not abandoned when the case is closed and remains property of the estate. 11 U.S.C. § 554(d). *See also In re Kopp*, 374 B.R. 842, 847 (Bankr.D.Kan.2007) ("Section 554 removes property from the estate only after an informed decision by the trustee."); *In re Lehosit*, 344 B.R. 782, 784 (Bankr.N.D.W.Va.2006). As property of the estate that is not administered or abandoned, the funds also remained protected by the automatic stay. *Kopp*, 374 B.R. at 847.

*Slone v. Anderson (In re Anderson )*, 511 B.R. 481, 494 (Bankr.S.D.Ohio 2013).

The facts present in *Anderson* differ so greatly from the facts of this case, it is inapplicable to the issues before this Court. The Surplus Proceeds in this case did not exist before the Debtors filed their bankruptcy petition. To be sure, the Surplus Proceeds did not exist until after the Trustee abandoned the asset (i.e., the Real Property) from which they were derived. Accordingly, this Court finds the *Anderson* case distinguishable from this case and unpersuasive.

## D. *Res Judicata* effect of the Order on Reconsideration and Intervention

And finally, the Trustee's additional argument regarding the *res judicata* effect of the State Court order is misplaced. A claim is barred by res judicata, also known as claim preclusion, if: (1) there has been a final decision on the merits by a court of competent jurisdiction; (2) the subsequent action is between the same parties or their privies; (3) the issue in the subsequent action was or should have been litigated in the prior action; and (4) there is identity between the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997) (citations omitted). As stated in the Order on Reconsideration and Intervention, the State Court determined that (1) the Debtors waived their homestead exemption in the foreclosure proceeding based on untimeliness, and (2) the Trustee was allowed to intervene in the foreclosure proceeding and receive the Surplus Proceeds to distribute to the Debtor's creditors. The State Court awarded the Surplus Proceeds to the Trustee, however, it did not make a specific finding that the Surplus Proceeds were property of the bankruptcy estate, nor did it provide the basis for awarding the Surplus Proceeds to the Trustee. Therefore, it is unclear what the State Court's reasoning was for its determination that the Trustee was entitled to the Surplus Proceeds. This Court has exclusive jurisdiction to determine what is property of the bankruptcy estate. *See* 28 U.S.C. § 1334. Since the bankruptcy court has exclusive jurisdiction over property of the estate [7], the bankruptcy court is the proper forum from which to

---

7. 28 U.S.C. §§ 1334(e)(1), 157(a) and General Order No. 05–02 entered in this District refer- ring all bankruptcy matters to this Court.

obtain that determination. The State Court did not make a specific finding that the Surplus Proceeds constitute property of the bankruptcy estate, so there has been no final determination on the merits regarding that issue. In addition, the State Court lacked jurisdiction to make such a finding. Consequently, the first element of *res judicata* is not satisfied, and this Court is not bound by the State Court's Order on Reconsideration and Intervention.

Furthermore, the third and fourth elements of *res judicata* cannot be satisfied either. The issue of whether the Debtor could claim a homestead exemption in his bankruptcy case was not litigated in the State Court foreclosure proceeding. The Order on Reconsideration and Intervention specifically stated that "because defendant George Haber failed to timely assert in this case his right to claim a so-called homestead exemption under [Ohio Revised Code § ] 2329.66(A)(1)(b), Haber's May 18, 2015 motion asking me to reconsider the May 11, 2015 entry is denied." The State Court specifically limited its determination to the foreclosure proceeding, so the issue of whether the Debtor could claim a homestead exemption in his bankruptcy case was not litigated before the State Court. Nor could it be, inasmuch as that question falls within the exclusive purview of this Court. And finally, the legal proceeding before the State Court was a foreclosure proceeding and the legal proceeding before this Court is a bankruptcy case. As a result, there is no identity between the causes of action.

## III. Conclusion

Based on the foregoing, the Court finds that the Trustee irrevocably abandoned the Real Property, the Surplus Proceeds are not and never have been property of the Debtor's bankruptcy estate, and the

Court does not have jurisdiction over the Surplus Proceeds. Accordingly, it is

**ORDERED AND ADJUDGED** that the Trustee's Objection to Amended Claim of Exemption in Real Estate located at 5317 Agate Place, Lewis Center, Ohio 43035 (Doc. # 90) is hereby OVERRULED and Debtor's claim of exemption in the Real Property (and by extension, proceeds thereof) is allowed. It is further

**ORDERED AND ADJUDGED** that the Surplus Proceeds in the amount of $80,593.21 are not property of the bankruptcy estate.

IT IS SO ORDERED.